UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA WILLIAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 562 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| MARK CURRAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On July 14, 2007, Plaintiff, Lisa Williamson, and her husband, Lance Williamson, were arrested by officers of the Sheriff of Lake County for the alleged theft of a horse. After a favorable resolution of her criminal trial, Plaintiff brought this suit against Defendants Detective Ted Sittig, Deputy Anthony Fanella and Sheriff Mark Curran. Plaintiff also brought suit against Defendants Marta Schroeder, the owner of the horse; Christine Capuson, Schroeder's agent and horse trainer; Gretchen Neddenriep, Schroeder's attorney; and Diver, Grach, Quade & Masini, LLP ("Diver Grach"), the law firm at which Neddenriep is a partner. Before the Court are four motions to dismiss filed by Defendants Curran, Sittig and Fanella (the "Lake County Sheriff Defendants"); Defendant Schroeder; Defendant Capuson; and Defendants Neddenriep and Diver Grach.

## BACKGROUND

The following summary is based on the allegations of the Complaint and the documents attached thereto.

In January 2006, Schroeder purchased a bay-colored Gelding horse, named Chevallo, from The Lance Williamson Stables, LLC ("Williamson Stables"), an Illinois limited liability company of which Lance Williamson ("Lance") is the managing member. Capuson negotiated the sale on behalf of Schroeder.

Just over a year later, in March 2007, Schroeder authorized Capuson to find a buyer for the horse. Schroeder told Capuson that she would prefer not to have Lance or Williamson Stables involved in the sale of the horse. Despite Schroeder's stated objections, Capuson contacted Lance about showing the horse on consignment at Williamson Stables. On or about April 27, 2007, Capuson arranged to have the horse made available to the Williamson Stables, which arranged for its barn manager, Jennifer Crow, to transport the horse to the Williamson Stables barn. Capuson agreed that Williamson Stables would provide for the care, feeding and boarding of the horse and requested that the invoices be sent directly to her rather than to Schroeder. The horse remained at the Williamson Stables barn from that date until November 7, 2008.

On or about June 30, 2007, Schroeder asked Capuson for a status report on the sale of the horse. Capuson had not previously informed Schroeder that the horse was in the possession of Lance and the Williamson Stables. In late June 2007, Capuson called Lance and asked if he had found a buyer for the horse. When Lance informed Capuson that he had not yet found a buyer, Capuson demanded the return of the horse. Lance then demanded payment of board and other costs for the horse. At that point, Capuson told Schroeder that Lance had asked Capuson to give him the horse to "try out for a few days." Capuson did not inform Schroeder of her agreement with Lance for the Williamson Stables to show the horse.

2

On July 1, 2007, Fanella went to Williamson Stables to investigate claims that the horse had been stolen. Fanella met with Crow and spoke to Plaintiff by phone. Fanella informed both Crow and Plaintiff that the horse had to be returned to Schroeder because "there was no written contract" for boarding the horse.

On July 2, 2007, the Williamson Stables recorded a Memorandum of Stable Keeper's Lien with the Lake County recorder. The same day, a copy of the Lien was provided to Fanella. Schroeder and Capuson filed written police reports with the Lake County Sheriff on July 3 and July 6, 2007, respectively, both of which are attached to the Complaint. On July 6, 2007, Sittig went to Williamson Stables to investigate the claims of Capuson and Schroeder. At that time, Sittig met with Crow, who provided Sittig with a copy of the Lien. Sittig told Crow that the Lien was "irrelevant." That same day, July 6, 2007, Sittig spoke to Plaintiff and told her to return the horse to Schroeder immediately.

On July 6, 2007, Sittig and Fanella prepared their initial reports on the matter, both of which are attached to the Complaint. On or about July 14, 2007, the Lake County Sheriff's Office issued a warrant for the arrest of both Lance and Plaintiff for theft of the horse under Section 5/16-1(a)(1)(A), based on the recommendation and investigation of Sittig and Fanella. Plaintiff and Lance were arrested by officers of the Sheriff of Lake County on July 14, 2007, and charged with theft of the horse.

On June 2, 2008, after a bench trial, the trial court entered directed findings in favor of the criminal defendants in that case, Plaintiff and Lance.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (*Bell Atlantic*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 550 U.S. 544, 127 S. Ct. at 1965, 1973 n. 14). Rule 10(c) of the Federal Rules of Civil Procedure provides that a document attached to a pleading "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## ANALYSIS

Plaintiff has alleged the following claims: a claim under § 1983 for false arrest against Sittig and Fanella (Count I); a false arrest claim under state law against Sittig and Fanella (Count II); a claim under § 1983 for violations of the Equal Protection Clause against Sittig and Fanella (Count III); a claim for malicious prosecution under state law against Sittig and Fanella (Count IV); a claim under 745 ILCS 10/9-102, seeking to hold Curran responsible for the actions of Sittig and Fanella (Count V); a *respondeat superior* claim against Curran (Count VI); and

three claims for malicious prosecution under state law against Schroeder (Count VII), Capuson (Count VIII) and Neddenriep and Diver Grach (Count IX). The motion to dismiss filed by the Lake County Sheriff Defendants shall first be considered.

*Section 1983 False Arrest Claim - Count I*

Sittig and Fanella ("Defendant Officers") argue that Plaintiff's § 1983 false arrest claim should be dismissed because Plaintiff was arrested pursuant to a facially valid arrest warrant. "Generally, a person arrested pursuant to a facially valid warrant cannot prevail in a § 1983 suit for false arrest." *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir. 1992) (*Juriss*). Plaintiff counters that an exception to this rule applies when the arresting officers knew that the arrest was not supported by probable cause. Plaintiff's view of the law is supported by *Juriss*, in which the Seventh Circuit noted that a facially valid arrest warrant is not a bar to a § 1983 false arrest claim where "officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause."[1] *Juriss*, 957 F.2d at 350.

Plaintiff argues that Defendant Officers lacked probable cause because there was no evidence to connect Plaintiff with the alleged theft of the horse. Plaintiff argues that, while Defendant Officers may have received information from Schroeder and Capuson, implicating

---

[1]The *Juriss* court went on to state, "this is particularly true of officers who knew that those who obtained the warrant had deceived the authorizing body." *Juriss*, 957 F.2d at 350-51. As Defendants apply the law, the exception applies only to this more limited situation, in which officers have actually misled the issuing body. However a closer reading of *Juriss* supports Plaintiff's somewhat broader interpretation of the exception. *See also Malley v. Briggs*, 475 U.S. 335, 444-45 (1986) (*Malley*) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.") (citations omitted). However, applying either standard will not affect the resolution as to this issue in the motion dismiss the § 1983 claims.

Lance in the theft of the horse, they had no information that Plaintiff herself was involved in the alleged theft. Essentially, Plaintiff argues that she was arrested because of her marital relationship with Lance and not because she was connected in any way with the alleged theft.

Plaintiff's argument that Defendant Officers had no evidence tying Plaintiff to the alleged theft is belied by her own Complaint. The Complaint states that "Capuson and Schroeder concocted a false story . . . and encourages [sic] Schroeder to file a police report, accusing Lance Williamson *and* Lisa Williamson of theft of the horse." (Compl., at ¶ 31) (emphasis added). The police reports attached to Plaintiff's Complaint and Exhibit 6 reflect that Defendant Officers had been told by Capuson that the horse was delivered to Williamson Stables to "try the horse" for three or four days in April of 2007 and that despite frequent phone calls by Capuson over the next several months, the horse was not returned. The reports further state that on July 1, 2007, Capuson went to the Williamson Stables to retrieve the horse and was told by Jennifer Crow, the barn manager, that Crow had no idea where the horse was. Schroeder's report to the police, attached as Exhibit 3 to Plaintiff's Complaint, states that when Capuson, Capuson's boyfriend and a police officer went to Williamson Stables on July 2, 2007, Plaintiff had told them that the horse was being tried out by someone else and would not disclose its location. (Compl., Ex. 3, at ¶ 4.) Capuson's report further states that Plaintiff, by phone, instructed the three to leave the property and informed them that Plaintiff had decided to put a lien on the horse. (Compl. Ex. 4, at p. 5.) Fanella's report, attached to the Complaint as Exhibit 5, indicates that when he advised Plaintiff, by phone, that the horse needed to be returned, Plaintiff advised him that money was owed for board and maintenance. (Compl. Ex. 5, at pp. 1-2.) Sittig's report, attached to the Complaint as Exhibit 6, indicates that when he spoke to Plaintiff by phone on July 2, 2007,

Plaintiff informed him that she would not return the horse. (Compl., Ex. 6, at p. 2.) Thus, contrary to Plaintiff's assertion that Defendant Officers had no information connecting Plaintiff with the alleged theft of the horse, the documents attached to Plaintiff's Complaint indicate that Defendant Officers had reason to believe that Plaintiff herself was in possession of the horse and was refusing to return the horse or provide information as to its whereabouts. Therefore, Defendant Officers had reason to believe that Plaintiff intended to permanently deprive Schroeder, the lawful owner of the horse, of use of the horse.

As noted above, Plaintiff was arrested pursuant to a facially valid warrant. Thus, Plaintiff states a plausible false arrest claim only if the "officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause." *Juriss*, 957 F.2d at 350. Stated another way, the officers may be held liable only if "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*, 475 U.S. at 444-45. Here, the documents attached to Plaintiff's Complaint preclude any possibility that Plaintiff can meet this standard. Those documents establish that Plaintiff admitted that she had the horse, insisted on her legal right to possess the horse and refused to return the horse. Given these statements, Plaintiff cannot reasonably contend that Defendant Officers were unreasonable in concluding that she, as well as Lance, was responsible for the continued refusal to return the horse to its lawful owner. Therefore, the facts pled by Plaintiff establish the exception discussed in *Juriss* does not apply and that the existence of a warrant precludes Plaintiff's claim for false arrest.

Plaintiff next argues that the Lien precludes any finding of probable cause. Plaintiff argues "the Illinois Stable Keeper's Lien Act barred the Sheriff from looking beyond the face of the lien to charge Lisa Williamson (or anyone else) with the crime of the theft of the horse." (Pl.'s Resp., at 2.) As Defendants point out, however, Plaintiff has cited no authority supporting the claim that law enforcement may not pursue an investigation once a lien has been filed. If this were the law, one unlawfully in possession of property could obviate criminal prosecution by simply filing a lien.

Finally, Plaintiff argues that the Lake County Sheriff Defendants' motion to dismiss is procedurally defective because it relies on matters outside the pleadings and, therefore, must be converted to a motion for summary judgment. Specifically, Plaintiff argues that to grant the motion to dismiss, the Court would necessarily have to take judicial notice of "the purported issuance of an arrest warrant, prosecutor's information and other related 'court documents.'" (Pl.'s Resp., at 2.) Plaintiff argues that the facts and circumstances underlying the issuance of these documents (and, therefore, whether there was probable cause to arrest Plaintiff) are in dispute.

Defendants correctly respond that the Court may take judicial notice of matters of public record, including state court records, without converting a motion to dismiss into a motion for summary judgment. Even short of this, the Court may presume the existence of a warrant for Plaintiff's arrest because Plaintiff herself has pled in the Complaint that a warrant issued.

(Compl., at ¶ 65.) Furthermore, in this case, the Court need not look to the facts underlying the issuance of a warrant to rule on the motion to dismiss. Plaintiff's Complaint establishes both that she was arrested pursuant to a warrant and that the facts of this case, as alleged in the Complaint, do not fit within the exception set out in *Juriss*.

Therefore, the Lake County Sheriff Defendants' motion to dismiss is granted with respect to Count I.

*Section 1983 Equal Protection Claim - Count III*

Plaintiff argues that she has pled a valid "class of one" equal protection claim against Defendant Officers because they lacked a rational basis for treating her differently than other wives who were not arrested along with their husbands. Essentially, Plaintiff argues again that Defendant Officers had no probable cause or rational reason to arrest her when it was her husband, Lance, who was accused of stealing the horse.

In *Engquist v. Oregon Department of Agriculture*, 128 S.Ct. 2146 (2008) (*Engquist*), the Court held that the class-of-one equal-protection theory does not apply in a public employment context. The Court stated, "[t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases treating like individuals differently is an accepted consequence of the discretion granted to governmental officials." *Engquist*, 128 S.Ct. at 2147. Since *Engquist*, courts have relied on this reasoning to hold that discretionary police action falls outside the reach

of the equal-protection class-of-one theory. *See Robertson v. City of Grand Rapids*, 2008 WL 4822218 at *10 (W.D. Mich. 2008); *Kahlily v. Francis*, 2008 WL 5244596 at *4 (N.D. Ill. 2008). Therefore, Plaintiff's claim that Defendant Officers' discretionary decision to arrest her is barred by the reasoning of *Engquist*.

However, even if Plaintiff's claim is not barred by *Engquist*, she has still failed to plead a valid class-of-one equal-protection claim. To bring such a claim, a plaintiff must allege: (1) that "he has been intentionally treated differently from others similarly situated" and (2) "that there is no rational basis for the difference in treatment or the cause of the differential treatment is a totally illegitimate animus toward the plaintiff by the defendant." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Here, although Plaintiff alleges that there was no probable cause to arrest her, the facts alleged, as augmented through the documents attached to the Complaint, do provide a rational basis for the arrest. As discussed above, Defendant Officers had reason to believe that Plaintiff, and not just Lance, was responsible for the alleged theft of the horse.

Therefore, the Lake County Sheriff Defendants' motion to dismiss is granted with respect to Count III.

### State-Law Claims

The remainder of Plaintiff's claims against all Defendants are based on state law. Therefore, because all claims over which the Court had original jurisdiction have been dismissed, the remainder of Plaintiff's claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

The Lake County Sheriff Defendants' motion to dismiss is granted with respect to Counts

I and III.  The remainder of Plaintiff's claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

Dated: November 12, 2009

JOHN W. DARRAH
United States District Court Judge